UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:19-CV-00144-JHM**

**DAMIEN A. SUBLETT**                                                                                           **PLAINTIFF**

v.

**JESSICA HALL,** *et al.*                                                                                       **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment by the Plaintiff, Damien A. Sublett ("Sublett"), *pro se*, and the Defendants. Sublett filed two motions for summary judgment—one against Defendant Angela Lyle ("Lyle"), [DN 73], the other against Defendants Bobby Jo Butts ("Butts") and Kevin Mazza ("Mazza"). [DN 68]. In response, Defendants Butts, Mazza, Jessica Hall ("Hall"), and Camera Long ("Long") moved for summary judgment. [DN 82]. Lyle filed a separate Motion for Summary Judgment [DN 78] along with a Motion to Declare Plaintiff Damien Sublett a Vexatious Litigator. [DN 110]. Fully briefed, these matters are ripe for decision. The Court **GRANTS** the Defendants' Motions for Summary Judgment. The Court **DENIES** Sublett's Motions for Summary Judgment. The Court also **DENIES** Lyle's Motion to Declare Sublett a Vexatious Litigator.

### I. BACKGROUND

Sublett alleges multiple constitutional violations under 42 U.S.C. §1983 against these Green Rivers Correctional Complex ("GRCC") officers. [DN 1]; [DN 22]. First, he alleges that Long, a female officer, violated his Fourth Amendment right to privacy by watching him numerous times while he was naked. [DN 1 at 5–6]. Second, Sublett alleges a First Amendment retaliation claim against Hall for threatening and issuing a write-up against him for filing the grievance

against Long. [*Id.* at 6]. Third, he brings a separate retaliation claim against Lyle for writing him up after he made an oral complaint during his medical trip. [*Id.* at 4–5]. Finally, he asserts another retaliation claim against Mazza and Butts for transferring him to another facility in retaliation for his lawsuit against GRCC staff. [DN 22]. Upon the 28 U.S.C. § 1915A review of Sublett's Complaint, the Court permitted these claims to proceed.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III. DISCUSSION

**A. Fourth Amendment Privacy Claim**

Sublett claims Long violated his Fourth Amendment right to privacy. He contends Long stopped at his cell door while he was using the toilet. [DN 1 at 5]. When he asked her to "give him a lil privacy . . . ," she allegedly responded that "she had been a[ ] Guard for Seven Years and ha[d] Seen penises all through the prison." [*Id.*]. In several other incidents, Long apparently would "purposely come to Sublett['s] door while he was naked . . . ." [*Id.* at 6].

Interpreting the Fourth Amendment, the Sixth Circuit has found "there must be a fundamental constitutional right to be free from forced exposure of one's person to strangers of the opposite sex when not reasonably necessary for some legitimate, overriding reason . . . ." *Kent*

3

*v. Johnson*, 821 F.3d 1220, 1226 (6th Cir. 1987). "Couched in [F]ourth [A]mendment terms, the inquiry becomes whether plaintiff has a reasonable expectation of privacy from such 'searches.'" *Id.* A "convicted prisoner maintains some reasonable expectations of privacy while in prison, particularly where those claims are related to forced exposure to strangers of the opposite sex, even though those privacy rights may be less than those enjoyed by non-prisoners." *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992). "[A] prison policy forcing prisoners to be searched by members of the opposite sex or to be exposed to regular surveillance by officers of the opposite sex while naked—for example while in the shower or using a toilet in a cell—would provide the basis of a claim on which relief could be granted." *Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004). "[I]f plaintiff can demonstrate that [the defendant] planned or intended to see [them] during the search, [they] would not be entitled to qualified immunity." *Id.* "In contrast, accidental viewing of a prisoner's naked body by a prison guard of the opposite sex is not a constitutional violation." *Jones v. Lawry*, No. 2:19-CV-49, 2019 WL 2482361, at *7 (W.D. Mich. June 14, 2019) (citing *Mills*, 389 F.3d at 579)).

In his own words, Sublett "primarily relies" on *Kent v. Johnson*. [DN 83 at 37]. But *Kent* is inapposite for two reasons. First, where *Kent* involved a motion to dismiss, this case involves a motion for summary judgment. 821 F.2d at 1222. While Sublett may have stated a plausible claim under Federal Rule of Civil Procedure 12(b)(6), under Rule 56's summary judgment standard, he must now support those claims with evidence. *Sublett v. Delaney*, No. 5:15-CV-00199, 2017 WL 3528608, at *4 (W.D. Ky. Aug. 16, 2017) (noting the "benefit of the more lenient Rule 12(b)(6) standard."). He has failed to do so. Second, *Kent*'s policy was broader. There, the prison showers were always "open to the view of all guards, male and female alike" and lacked "modesty panels." *Kent*, 821 F.3d at 1221–22. Here, the GRCC policy requires officers to engage in routine cell

4

checks—some of which occur while the inmate is changing clothes or using the restroom. [DN 82-6 at ¶ 8]. Despite Sublett's arguments to the contrary, these searches do not amount to the constant "surveillance" at issue in *Kent* or *Mills*. 821 F.2d at 1226; 389 F.3d at 579.

Sublett fails to show any genuine dispute of material fact that Long violated his Fourth Amendment right to privacy.[1] Kentucky Corrections Policies and Procedures ("KCPP") "require[s officers] to conduct security rounds every 30 minutes." [DN 82-6 at ¶ 4]. For these random check-ins, the officers must look into the cell to ensure the inmate's presence. [*Id.* at ¶¶ 3–8]. In her affidavit, Long explains that the "only time [she] looked into inmate Sublett's cell was during [her] required count and security rounds, and then only for the 5-7 seconds necessary to accomplish those tasks." [DN 82-6 at ¶ 12]. She also notes that during a normal shift she would "conduct 16 security rounds" that were "purposely not on a set schedule." [*Id.* at ¶ 4]. Given this system, it is unsurprising that Long saw inmates naked on multiple occasions. [*Id.* at ¶ 8]. Per *Mills*, "[t]he fact that [an officer] may have seen [the inmate] accidently as he was walking by cannot be a constitutional violation in the absence of any evidence that either the normal search policy was unconstitutional or that it was carried out in an unconstitutional manner." *Mills*, 389 F.3d at 579. (finding no intent when the officer "stared" at the inmate); *Sumpter-Bey v. Weatherford*, No. 3:10-1021, 2012 WL 1078919, at *6 (M.D. Tenn. Mar. 30, 2012) ("*only infrequent and casual observation at a distance*, and that are reasonably related to prison needs are no[t] so degrading as to warrant court interference."). Moreover, while Long disputes making the comment about seeing inmates' privates, [DN 82-6 at ¶ 12], even if she had, the Court does not find that this remark evidenced an intent to violate Sublett's privacy.

---

[1] Likewise, Sublett baselessly contends Long violated the KCPP. [DN 83 at 39–40]. In quoting KCPP Section 14.7 (E)(1)'s provision on inmate privacy, he omits language exempting opposite sex officers who view inmates nude "in exigent circumstances or when such viewing is incidental to routine cell checks." [DN 97 at 13].

In sum, "[t]here is not enough evidence in the record . . . to create a dispute of material fact as to [Long's] intent." *Mills*, 389 F.3d at 580. All evidence indicates the times she viewed Sublett naked were "accidental and not based on any policy which forced [him] to be viewed by females." *Violett v. King*, No. 3:10-CV-P524, 2019 WL 7609391, at *5 (W.D. Ky. Dec. 9, 2019). Thus, the Court **GRANTS** the Defendants' Motion for Summary Judgment with respect to Sublett's Fourth Amendment privacy claim against Long.

### B. First Amendment Retaliation Claims

Sublett first raises multiple First Amendment retaliation claims against Defendants Butts, Mazza, Hall, and Lyle.[2] [DN 1 at 4–6]; [DN 22]. To succeed on this claim, a plaintiff must show:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). However, "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.* at 399.

The Defendants present two counterarguments. First, they allege Sublett failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Proper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Therefore, "it is the prison's requirements, and not the

---

[2] Sublett concedes that "[t]he only claim against Long is the [F]ourth Amendment right to privacy claim." [DN 83 at 1]; [DN 97 at 1]. Therefore, the Court does not need to address any First Amendment retaliation claim against Long.

6

PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Second, the Defendants argue that Sublett cannot prove the requirements for a retaliation claim under the First Amendment. Because Sublett fails on the former argument, the Court does not reach the latter.

**1. Hall**

Sublett poses two retaliation arguments against Hall. First, grievance No. 19-10-28 alleges Hall searched his cell and improperly questioned him about his grievance against Long. [DN 83-1 at 4]. Former Grievance Coordinator Mark Jackson ("Jackson") deemed the dispute "complete" upon finding Sublett took no action after the informal resolution. [*Id.* at 1]. Second, although he did not file a formal grievance, Sublett contends Hall issued a disciplinary report against him solely because he filed grievance No. 19-10-28. [DN 83 at 14–20].

Sublett's actions show he did not "exhaust all 'available' remedies" under the GRCC's internal grievance policy. *Woodford*, 548 U.S. at 85. As Jackson noted, Sublett did not return the original informal resolution. KCPP Section 14.6(II)(J)(b)(8) states: "If the grievant is not satisfied with the outcome of the informal resolution step . . . he may make a written request to the Grievance Coordinator that the Grievance Committee hold a hearing concerning this grievance." [DN 82-2 at 15]. Sublett did not perform this step. "[A]n inmate cannot simply . . . abandon the process before completion and claim that he exhausted his remedies . . . ." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999).

His attempts to blame the Grievance Aid for non-exhaustion of remedies are misplaced. [DN 83 at 5]. He incorrectly claims that because the Grievance Aid assisted him, he "did not per policy enteract [sic] with the filing" of the grievance. [*Id.*]. The inmate is ultimately responsible for exhausting the grievance process. Sublett also misunderstands this process. Under Section

7

14.6(II)(H)(2)(g), the Grievance Aid is only responsible for "[f]oward[ing] the *written grievance* to the Grievance Coordinator[.]" [DN 82-2 at 11] (emphasis added). Thus, when Sublett received the informal resolution notification, it was his duty to return the form.

Next, Sublett asserts Hall retaliated against him by filing a disciplinary report exclusively because he filed the previous grievance. Notably, he did not file a grievance directly addressing this incident; he attributes this shortcoming to the fact the issue of retaliation was "non-grievable" under KCPP policy.[3] [DN 83 at 16–18]. But administrators told Sublett such claims were "grievable." [DN 83-1 at 14]. Moreover, in another of Sublett's cases, the Sixth Circuit found "retaliation claims . . . grievable issues under CPP 14.6." *Sublett v. Howard*, No. 19-6094, 2020 WL 5793101, at *3 (6th Cir. June 25, 2020). That case also dealt with "the issuance of allegedly retaliatory disciplinary reports," which the court found "a grievable matter." *Id.* Sublett's failure to take advantage of this filing indicates he did not exhaust all remedies.

In short, Sublett's retaliation claims against Hall fail. For the first, he failed to exhaust the informal resolution process. For the second, he never filed a grievance. The Court **GRANTS** the Defendants' Motion for Summary Judgment on these claims.

**2. Mazza and Butts**

Sublett's Supplemental Complaint presents his argument for a retaliation claim against Mazza and Butts. [DN 22]. Allegedly, Mazza and Butts "were making routine rounds" when they stopped at Sublett's cell and commented on his existing grievances and lawsuit. [*Id.* at 1]. Later, "Mazza put Sublett in for a transfere [sic] far[] East." [*Id.*]. Sublett then filed multiple grievances against Mazza and Butts for allegedly transferring him in retaliation. [DN 83 at 4]. First, grievance

---

[3] The only grievance possibly related to the disciplinary report, No. 20-242, was filed almost a year after the alleged retaliation and only tangentially discusses Hall's report. [DN 83-1 at 14]. Thus, it cannot satisfy the exhaustion requirement.

8

No. 20-013 demanded that the prison administration respond to a previous grievance and provide a copy of the grievance policy. [DN 83-3 at 12]. Second, grievance No. 20-468 discussed his transfer and requested an explanation for this classification. [*Id.* at 2].[4]

Looking at these grievances, Sublett did not exhaust all available administrative remedies. Under KCPP Section 14.6(J)(1)(a)(2), "[a] grievance about a personal and specific incident shall be filed within five (5) business days after the incident occurs." [DN 82-2 at 13]. Sublett's Supplemental Complaint states that "[o]n or about November 2019 . . . Deputy Butts and Warden Mazza were making routine rounds" when they commented on his pending actions and initiated a transfer. [DN 22 at 1]. Based on his recitation, the alleged retaliation occurred in November 2019. Sublett filed grievances No. 20-013 and No. 20-468 on January 6, 2020, and December 6, 2020 respectively. [DN 83-3 at 12]; [DN 83-3 at 2]. Both filing dates surpass the facility's five-day filing requirement. Thus, he failed to exhaust the available administrative remedies for his retaliation claim against Butts and Mazza. The Court **GRANTS** the Defendants' Motion for Summary Judgment on this claim.

### 3. Lyle

Sublett brings another First Amendment retaliation claim against Lyle. He contends that prison officers escorted him to medical despite not having an appointment. [DN 73-1 at 2]. At medical, Lyle asked him to sign a medication charge slip. [*Id.*]. After signing this form, he complained that "if [he] did not have an [sic] medical Appointment, How would [he] know, to come to the medical department." [*Id.*]. Lyle and Sublett then disputed whether this was a facility policy, leading him to say, "We go by my rules." [DN 81 at 4]; [DN 19-1 at 1]. Where Sublett

---

[4] Within grievance No. 20-648, Sublett mentions filing another grievance "on or about Dec. 7th, 2019 . . .against GRCC official [Mazza] and [Butts]." [*Id.* at 12]. But he has not attached this grievance—nor the "Exhibit 100A" which he refers to—to any of his pleadings. [DN 83 at 4]; [DN 97 at 5]. Since the Court does not have this grievance, it cannot evaluate whether it exhausted all administrative remedies.

9

claims Lyle wrote him up for threatening her, [DN 73-1 at 2–3], she maintains she filed an Information Report. [DN 78-2 at ¶ 7]. The captain's office then issued a disciplinary report against Sublett for making threatening statements, for which the Adjustment Officer found him guilty. [*Id.* at ¶ 8]; [DN 19-1 at 1].

Sublett failed to exhaust all available administrative remedies for his claim against Lyle. Per Sublett's Motion for Summary Judgment [DN 73], the incident occurred on July 22, 2019. [DN 73-1 at 2].[5] The only grievance he filed in respect to the incident was on August 16, 2019— the day the Adjustment Officer found him guilty at a disciplinary hearing. [DN 19-1 at 1]. Again, under Section 14.6(J)(1)(a)(2), an inmate must file a grievance within five days of the "specific incident." [DN 82-2 at 13]. The "specific incident" at the center of Sublett's retaliation claim is the interaction between him and Lyle on July 22. In his Complaint, Sublett asserts that "on 7-22-19 [he] received a write up from Lyle for making threatening or intimidating statements[.]" [DN 1 at 4–5]. Notably, he alleges Lyle acted on this date, not the later date of August 16, 2019. [DN 73-1 at 2–3]. But, the prison administration only reviewed the report, held a hearing, and found him guilty on that date. [DN 19 at 1–2]. Viewing the hearing as the "specific incident" for the purpose of Section 14.6(J)(1)(a)(2)'s deadline would essentially make Sublett's grievance an impermissible challenge to the result of that disciplinary proceeding—not the underlying incident. In sum, it was Lyle's issuance of the report that was the "specific incident" and not the Adjustment Officer's decision to find Sublett guilty that forms the basis for his retaliation claim. Thus, under the PLRA, Sublett did not exhaust all available administrative remedies because his grievance did not comport with the five-day limit. 42 U.S.C. § 1997e(a); *Woodford*, 548 U.S. at 81. The Court

---

[5] As Defendant Lyle's Motion for Summary Judgment identifies, there is some confusion as to when the incident occurred. [DN 78 at 4 n. 2]. Sublett's motion states the date as July 22, 2021 [DN 73-1 at 2]; his appeal from the disciplinary sanction states the date as July 19, 2019. [DN 19-1 at 3]. While Sublett's reference to 2021 is a mere clerical error, it matters not whether the events occurred on July 19 or July 22, 2019—neither satisfies the deadline.

**GRANTS** Defendant Lyle's Motion for Summary Judgment.

### C. Motion to Declare Sublett a Vexatious Litigator

Lastly, the Court addresses Lyle's Motion to Declare Sublett a Vexatious Litigator [DN 110]. She requests the Court to: (1) declare Sublett a vexatious litigator; (2) preclude him from filing additional pleadings in the Western District of Kentucky unless an attorney in good standing certifies the pleading is non-frivolous; (3) bar him from proceeding *in forma pauperis*; and (4) bar him from filing additional motions for sanctions, contempt, or other court-ordered relief unrelated to the merits unless an attorney in good standing certifies the motion is non-frivolous. [*Id.* at 1].

"Federal courts have the inherent power to impose appropriate sanctions, including restrictions on future access to the judicial system, to deter future frivolous, harassing or duplicative lawsuits." *Gueye v. U.C. Health*, No. 1:13-CV-673, 2014 WL 4984173, at *7 (S.D. Oh. Oct. 6, 2014) (citing *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43–45 (1991)). However, "a person cannot be absolutely foreclosed from initiating an action in a court of the United States . . . ." *Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996). These considerations apply to *pro se* litigants. *Bonds v. Daley*, No. 2:17-CV-00008, 2018 WL 2405903, at *16 (E.D. Ky. Feb. 21, 2018).

Given the power to impose sanctions on *pro se* litigants who have abused the judicial system, the Court now weighs the need to adopt Lyle's proposed sanctions against Sublett. In a previous case, Senior Judge Russell "impose[d] a permanent injunction prohibiting Sublett from proceeding *in forma pauperis* in this Court and from filing any new complaint or removal petition without first obtaining approval from the Court." *Sublett v. Henson*, No. 5:16-CV-00184, 2020 WL 1290609, at *8 (W.D. Ky. Mar. 18, 2020). This prior opinion satisfies Lyle's first two

11

requests—that the Court declare Sublett a vexatious litigator and bar him from proceeding *in forma pauperis*.

Furthermore, while Lyle's proposed sanctions requiring certification for non-frivolous motions and pleadings would not foreclose Sublett's access to the court system, the Court does not find them appropriate. Even if Sublett forged evidence in previous cases, the Defendants have not identified any falsification in this case. [DN 110 at 3]; *Henson*, 2020 WL 1290609, at *3–8; *Sublett v. Howard*, No. 0:18-084, 2019 WL 4601837, at *8 (E.D. Ky. Sept. 23, 2019), *aff'd*, No. 19-6094, 2020 WL 5793101 (6th Cir. June 25, 2020). In a separate opinion, the Court has already criticized Sublett for filing excessive motions for sanctions and warned him that "[a]dditional motions by Plaintiff for sanctions or motions to strike based on such evidence or arguments may result in an award of attorneys' fees in favor of the opposing party for having to respond to the motion." [DN 114 at 5–6]. The Court reiterates that dictate here. Furthermore, the Court cautions Sublett that future conduct arising to the same level may result in the Defendants' desired sanctions. With this warning in mind, the Court **DENIES** Lyle's Motion to Declare Sublett a Vexatious Litigator.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Defendants' Motions for Summary Judgment [DN 78, 82] are **GRANTED**. Sublett's Motions for Summary Judgment [DN 68, 73] are **DENIED**. Additionally, Lyle's Motion to Declare Sublett a Vexatious Litigator is **DENIED**. [DN 110]. The Court will enter a judgment consistent with this opinion.

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Damien A. Sublett, *pro se*
    Counsel of Record

December 16, 2021

12